UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CATHY TROUTT, Plaintiff, | ) | |
| v. | ) | CASE NO. 1:06-cv-1189-DFH-TAB |
| CITY OF LAWRENCE, et al., Defendants. | ) | |

ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Introduction*

Plaintiff Cathy Troutt has served as a police officer for the City of Lawrence since 1986. She contends that the City, former Mayor Deborah Cantwell, former Chief Jack Bailey, and former Chief Daniel Gliszczynski discriminated against her because of her sex in violation of Title VII of the Civil Rights Act of 1964 and the equal protection clause of the Fourteenth Amendment to the United States Constitution, and then retaliated against her when she complained. At this summary judgment stage of the case, Troutt argues that she was eligible for three promotions but was passed over because she is female and because she previously had complained of sex discrimination within the police department. She also claims that the City breached its obligations to her under a settlement agreement negotiated by the EEOC and that she was damaged by that breach.

Defendants have moved for summary judgment on each of Troutt's claims. For the following reasons, defendants' motion is granted in part and denied in part.

*Standard of Review*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate when there are no genuine issues of material fact, leaving the moving party entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To prevail, the moving party must show that there is no genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on an issue at trial and the motion challenges that issue, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e)(2); see also *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999).

A factual issue is material only if resolving the factual issue might change the suit's outcome under the governing law. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented. See *id*. In deciding a motion for summary judgment, a court may not assess the credibility of witnesses, choose between competing

inferences, or balance the relative weight of conflicting evidence; the court must view all the evidence in the record in the light reasonably most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. See Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 249-50.

*Undisputed Material Facts*

I. *The Parties*

Plaintiff Cathy Troutt has been a police officer for the City of Lawrence, Indiana since 1986. Before joining the Lawrence police department, Troutt was an officer for the Indianapolis Airport police for six years and in that department reached the rank of lieutenant. Troutt Dep. 26, Ex. 1. In the Lawrence police department, Troutt was promoted to sergeant in 2004, and to captain of operations in February 2007.

In November 2003, defendant Deborah Cantwell was elected mayor of the City of Lawrence, defeating the long-time incumbent Mayor Tom Schneider. Troutt had supported Cantwell's campaign. Troutt Dep. 38-39; Cantwell Aff. ¶ 4. Troutt had expressed her encouragement and support in a card she sent to Cantwell, and she attended fund raisers and spoke with citizens on Cantwell's behalf. Troutt Dep. 39-40. One of Cantwell's campaign promises was to support a merit system for hiring and promotions in the police department. Cantwell Aff. ¶ 3.

Defendant Daniel Gliszczynski served as chief of the police department from October 2004 until April 2006, and defendant Jack Bailey served as chief from April 2006 to December 2006. Cantwell Aff. ¶¶ 14, 17-18.

II. *Troutt's First EEOC Charge and Settlement*

On November 3, 2003, Troutt filed a charge of discrimination with the EEOC accusing the department of discriminating against her based on her sex and age. Cantwell Aff. Ex. B. In her charge, Troutt alleged that she had asked to be considered a candidate for promotion within the police department on several occasions, to no avail. She stated that the department did not advertise job openings and did not have a promotional process or a written policy concerning promotions, and that male officers received preferential treatment with regard to promotions and training. She admitted that three females had been promoted within the department, but stated that those three unnamed women were related to the mayor and a member of the city council.

Mayor Cantwell became aware of Troutt's charge after taking office in January 2004. She remembers Troutt telling her that she had filed her charge to insulate herself from retaliation in the event that Mayor Schneider had won re-election. Cantwell Aff. ¶ 6. Troutt's charge was based on promotions that had occurred before Cantwell took office, and Cantwell did not consider the charge to be an "attack" on her or her administration. Cantwell. Aff. ¶ 6.

On January 27, 2004, Troutt and the City entered into a settlement agreement through the EEOC mediation process. Troutt agreed not to sue the City based on the allegations in her charge. The City agreed to promote Troutt to sergeant within six months. The parties also agreed as follows:

> Within six months of execution of this Agreement, Respondent agrees to make a good faith effort to formulate a proposal of a merit system which will govern the procedures for promoting the police officers of the Lawrence Police Department. Further, Respondent agrees to present such proposal to the police officers (voting members) for their consideration of the proposed merit system.

Cantwell Aff. Ex. C. Pursuant to the settlement agreement, Troutt was promoted to sergeant in February or March 2004.[1] Cantwell Aff. ¶ 15; Troutt Dep. 62, Ex. 1.

III. *The City's Efforts to Implement a Merit System*

In the six months following the settlement agreement, Mayor Cantwell recalls meeting on one occasion with James Parish, who was the chief of the police department at that time, to discuss implementing a merit system. Cantwell Aff. ¶ 8. Further details of this conversation are unknown, including the date, duration, or its depth into the topic of a merit system. This conversation was the only action taken towards implementation of the merit system within six months of the agreement with Troutt.

---

[1]The exact month that Troutt received her promotion is not clear. See Troutt Dep. 62 (Troutt promoted on March 16, 2004); Troutt Dep. Ex. 1 (Troutt promoted in February 2004). This discrepancy is not material.

In April 2005, Chief Daniel Gliszczynski issued a memorandum to Captain Jack Bailey discussing his desire to move forward with a merit system and the need to have the Fraternal Order of Police meet concerning the adoption of a merit system. Gliszczynski Aff. ¶ 3, Ex. A. Then, in June, Mayor Cantwell proposed a merit system that was discussed at the July 29th FOP meeting. Cantwell Aff. ¶ 9, Ex. D. The FOP formed a committee to study the proposal. Gliszczynski Aff. ¶ 3, Ex. B. Cantwell issued a press release on December 14 expressing her support for a merit system. Cantwell Aff. ¶ 10, Ex. E.

Officers voted on the proposed merit system on April 10, 2006, and it failed to pass. Gliszczynski Aff. ¶ 4. Cantwell wrote a letter to the president of the FOP advocating the adoption of a merit system. Cantwell Aff. ¶ 10, Ex. F. A second vote was held on August 8, 2006. On the second vote, the members of the police department approved the plan and voted to ask the City Council to pass an ordinance adopting a merit system. The City Council passed the ordinance, and on December 13, 2006, the police department voted to adopt the merit system. Gliszczynski Aff. ¶ 4, Ex. D, Ex. E; Cantwell Aff. Ex. G. The merit system went into effect in January 2007. Grandy Aff. ¶ 7.

The merit system governs the means by which officers are promoted to the ranks of sergeant and lieutenant. Cantwell Aff. Ex. H, Art. IV. These ranks are known as "permanent" ranks because once an officer becomes a sergeant or lieutenant, the officer cannot be removed from that position without being

prosecuted through the department's disciplinary process. Cantwell Aff. ¶ 12. The ranks of chief, deputy chief, and captain are "administrative" ranks. The mayor appoints the chief, and the chief appoints the deputy chiefs and captains. Officers holding these positions serve at the pleasure of the mayor or the chief. If one of these officers is removed, the officer returns to his or her last permanent rank. Cantwell Aff. ¶ 12.

## IV. *Mayor Cantwell's Administration*

### A. *Weekly Police Leadership Lunch Meetings*

For approximately two years, Cantwell held weekly lunch meetings with the leadership of the Lawrence Police Department. Troutt has presented extensive evidence that Cantwell referred to these meetings as the "Cunt Club." Bailey Pl. Aff. ¶¶ 5-7; Bowser Aff. ¶¶ 8-10; Burns Aff. ¶¶ 6-7. The "password" used at these meetings was also the word "cunt." Bailey Pl. Aff. ¶ 8; Bowser Aff. ¶ 11; Burns Aff. ¶ 8. The password was derived from Cantwell's term for the female members of the Lawrence police department. Bailey Pl. Aff. ¶ 9; Bowser Aff. ¶ 12; Burns Aff. ¶ 9. Cantwell routinely referred to Troutt using that term, and the police officers who attended the weekly meetings believed that Cantwell "hated [Troutt] with a passion."[2] Bailey Pl. Aff. ¶¶ 10-11; Bowser Aff. ¶¶ 13-14; Burns Aff. ¶ 10.

---

[2]Defendants contest the admissibility of this evidence, contending that the declarants had no personal knowledge of how Mayor Cantwell felt about Troutt. Def. Reply 4. However, they may offer their opinion about what they believed based on what they had heard and witnessed in this regard.

B. *Troutt's Assignment to Mayor Cantwell's Security Detail*

In January 2004, Troutt was assigned to Mayor Cantwell's security detail. Cantwell Aff. ¶ 22. Because of Troutt's accrual of overtime, the mayor decided that a second driver was needed, and Troutt approved of that decision initially. Troutt Dep. 89. Officer Jerry Shrout was assigned. Cantwell Aff. ¶ 23. Because Mayor Cantwell had two full-time drivers, however, she became the topic of public criticism and adverse publicity. Cantwell Aff. ¶ 23, Ex. J. Chief Gliszczynski and Cantwell reassigned Troutt to police operations on or about November 16, 2004. Cantwell Aff. ¶ 24, Ex. L. Troutt did not receive extra compensation as part of the mayor's security detail. Troutt Dep. 112.[3]

V. *Promotions Within the Police Department*

A. *Promotions Under Chief Parish*

---

[3]Troutt does not raise a cognizable claim that her reassignment from Mayor Cantwell's security detail was discriminatory or retaliatory, although in her "Statement of Material Facts in Dispute," Troutt contends that Cantwell's decision to remove her from her security detail "was based on Troutt's sex, female, and/or her prior EEOC charge of discrimination." Pl. Response 3. Troutt offers no legal basis for this assertion. The court is not obliged to develop any argument concerning Troutt's reassignment on her behalf, and the court considers such an argument to be forfeited. Information regarding Troutt's assignment to and reassignment from Mayor Cantwell's security detail is provided here for background only.

Chief Carter resigned about a month after Cantwell took office. He was replaced by Jim Parish on February 2, 2004.[4] Parish had experience as a lieutenant and seven years' seniority over Troutt at the time of his promotion. Parish appointed lieutenant Michael Fishburn as deputy chief.[5] Fishburn had experience as a lieutenant and twelve years' seniority over Troutt at the time of his promotion. Captains Ray Anderson and Lana Schneider and Deputy Chiefs Jack Bailey, Chuck Fitzwater, and Bob Bowser were reduced in rank to lieutenant. Cantwell Aff. ¶ 14. Troutt's promotion to sergeant in February or March 2004 pursuant to the EEOC settlement was the only permanent rank promotion that year. Cantwell Aff. ¶ 15; Troutt Dep. 62.

---

[4] Troutt has not challenged Parish's promotion on summary judgment.

[5] Troutt has not challenged Fishburn's promotion on summary judgment.

B. *Promotions Under Chief Gliszczynski*

In October 2004, Gliszczynski replaced Parish as chief,[6] and Parish returned to the rank of lieutenant. Cantwell Aff. ¶ 14. At the time of his promotion, Gliszczynski had experience as a lieutenant and three years' seniority over Troutt. Upon assuming his rank of chief, Gliszczynski advertised an opening for deputy chief. Troutt expressed an interest in the position and was interviewed, but Brian Bulger was chosen for the position.[7] Deputy Mayor Mike Rapp told Troutt that she interviewed better than all of the other candidates except for Bulger. Troutt Dep. 149-50. At the time of his promotion, Bulger had approximately three years' more seniority than Troutt, as well as previous experience as a lieutenant and captain. Cantwell Aff. ¶ 14; Gliszczynski Aff. ¶ 2. Bulger also had a master's degree, and Gliszczynski considered him the best applicant for the position. Gliszczynski Aff. ¶ 2.

On March 18, 2005, Jack Bailey was appointed as captain.[8] Then, on October 16, 2005 Bailey was appointed deputy chief, and Bulger was returned to the appointed position of captain. Bailey had experience as a captain under former Mayor Schneider. On April 16, 2005, Bob Bowser was appointed deputy

[6]Troutt does not challenge Gliszczynski's promotion on summary judgment.

[7] Troutt does not challenge Bulger's promotion on summary judgment.

[8] Troutt does not challenge Bailey's promotions on summary judgment.

chief.[9] Bowser had thirteen years' seniority over Troutt and previous experience as deputy chief. Cantwell Aff. ¶ 16.

At some point in 2005, Jerry Shrout was promoted to the rank of sergeant.[10] Shrout's promotion was the only permanent rank promotion that year. Cantwell Aff. ¶ 15.

C. *Promotions Under Chief Bailey*

Gliszczynski resigned as chief effective April 19, 2006 and was returned to his permanent rank of lieutenant. Jack Bailey replaced him as acting chief. On May 1, with Cantwell's approval, Bailey promoted Jim Blythe to sergeant,[11] and promoted Jerry Shrout to lieutenant. Bailey Aff. ¶¶ 2-3. Blythe was to serve as the liaison between the police department and the Metropolitan School District of Lawrence Township, and was promoted because Bailey believed that an officer in that position should hold rank. Bailey Aff. ¶ 3. Defendants contend that Shrout was promoted because of his tenure with the police department since 1988, his longstanding loyalty to the department, his positive attitude, and his willingness to put the police department first and above personal ambition, and because

---

[9] Troutt does not challenge Bowser's promotion on summary judgment.

[10] Troutt does not challenge Shrout's promotion to sergeant on summary judgment.

[11] Troutt does not challenge Blythe's promotion to sergeant on summary judgment. She was already a sergeant at the time.

Bailey believed he was the best candidate for appointment to lieutenant from the sergeant rank. Bailey Aff. ¶ 2. Shrout had not filed a charge or lawsuit alleging discrimination since January 2004. Def. Ans. to Interrog. 9. On June 16, sergeant Erica Schneider was promoted to lieutenant.[12] Schneider is a relative of former mayor Schneider. Cantwell Aff. ¶ 17.

D. *Promotions Under Chief Grandy*

Bailey served as chief until December 2006, when Byron Grandy was hired from outside the department to serve as chief. Cantwell Aff. ¶ 13. Grandy returned all officers then serving as captains to their permanent ranks and replaced them with chosen appointees to captains of administration, investigations, and operations, reducing the overall number of captains as he did so. Grandy Aff. ¶ 2. On December 16, 2006, these assignments were made as follows: Anderson, Bailey, Bulger, Don Deputy, and Steve York were returned to their permanent rank of lieutenant, and Blythe, Scott Evans, and Erica Schneider were appointed as captains. Grandy Aff. ¶ 2-5; Cantwell Aff. ¶ 18. These appointments were made on a trial basis. Grandy Aff. ¶ 6.

Grandy asserted that he appointed Evans captain of investigations because he had a strong work ethic, an exemplary record, and was familiar with investigations due to experience. Grandy Aff. ¶ 3. Evans had not filed a charge

[12]Troutt does not challenge Schneider's promotion on summary judgment.

or lawsuit alleging discrimination since January 2004. Def. Ans. to Interrog. 9. Blythe was appointed captain of operations. Grandy affirmed that he had been informed that Blythe had performed well on various runs, and he displayed significant concern for public safety as well as a high degree of energy which Grandy thought was necessary for a captain over operations. Grandy Aff. ¶ 4. Blythe had not filed a charge or lawsuit alleging discrimination since January 2004. Def. Ans. to Interrog. 9. However, in early 2007 it was determined that Blythe could not handle the administrative aspects of his position as captain of operations, and he was reduced in rank to sergeant. Grandy Aff. ¶ 6.

Captain promotions were not governed by the merit system, Cantwell Aff. Ex. H, Art. IV, which had not been fully implemented when the position of captain of operations reopened upon Blythe's demotion in 2007. Troutt Dep. 14-15. Chief Grandy advertised the opening and used testing, interviews, and scoring to evaluate the candidates. Troutt Dep. 14-15. Troutt, Stan Stephens, and two other male officers applied for the position. Stephens and Troutt tied on their scores, and Troutt was awarded the promotion because she had more seniority than Stephens. Grandy Aff. ¶ 7.

VI. *Troutt's Second EEOC Charge and Subsequent Lawsuit*

On January 27, 2006, Troutt filed a second charge with the EEOC, alleging sex discrimination and retaliation. Pl. Ex. 5. In the second charge, she contended that the Lawrence police department had not implemented a merit system governing the promotion of police officers, contrary to the settlement reached as a result of her first charge, and that she had been passed over for promotions in favor of male officers on a number of occasions. She identified specifically that Bob Bowser was promoted in April 2005, Jack Bailey was promoted in August 2005, and Ray Anderson had recently been promoted to captain of operations. She also contended that the police department had continued its practice of not advertising job openings, not instituting a process for promotions, and not establishing a written policy regarding promotions, alleging that this failure was due to the department's effort to promote male officers at the expense of female officers. Generally, she stated that she had been, and continued to be, treated less favorably in the terms, conditions, and privileges of her employment.

On August 7, 2006 Troutt filed her complaint in this court. Her Title VII discrimination and retaliation allegations against the City are based on the allegations in her January 27, 2006 charge. Additionally, she alleges pursuant to 42 U.S.C. § 1983 that Deborah Cantwell (in her individual and official capacities), Jack Bailey (in his official capacity), and Daniel Gliszczynski (in his individual capacity) violated her rights under the equal protection clause of the

Fourteenth Amendment. Also, she brings a state law breach of contract claim against the City. Neither her charge nor her complaint have been amended since those documents were filed.

*Discussion*

I. *Troutt's Sex Discrimination Claims Under Title VII and Equal Protection*

Troutt brings sex discrimination claims against defendants under both Title VII and the equal protection clause of the Constitution. A Title VII claim is brought against an employer (here, the City). Equal protection claims can also be brought against individual employees (here, Cantwell, Bailey, and Gliszczynski), as well as the City (where the decision amounted to a city policy or custom). See *Salas v. Wisconsin Dept. of Corrections*, 493 F.3d 913, 926 (7th Cir. 2007); *Vela v. Village of Sauk Village*, 218 F.3d 661, 665 (7th Cir. 2000). In support of her gender discrimination claims, Troutt alleges that the City, Cantwell, Bailey, and Gliszczynski promoted men – specifically Jerry Shrout in May 2006, and Jim Blythe, and Scott Evans in December 2006 – but did not promote Troutt because she is female.

A. *Exhaustion of Administrative Remedies Under Title VII*

Title VII requires a plaintiff to exhaust her administrative remedies by filing a charge with the Equal Employment Opportunity Commission or the appropriate

state or local agency before the plaintiff may proceed to court. See 42 U.S.C. § 2000e-5(e)(1); *Dandy v. United Parcel Service*, 388 F.3d 263, 270 (7th Cir. 2004). The charge filed with the agency will limit the claims the plaintiff later may pursue in litigation because the court may hear only claims that were included in the EEOC charge, or that are reasonably related to the allegations of the charge. See *Doe v. Oberweis Dairy*, 456 F.3d 704, 708-09 (7th Cir. 2006); *Dandy*, 388 F.3d at 270. In other words, the claims brought to court must be "within the scope" of the EEOC charge, for "an aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Conner v. Illinois Dept. of Natural Resources*, 413 F.3d 675, 680 (7th Cir. 2005), quoting *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). At a minimum, the complaint filed in the district court and the charge filed with the EEOC must describe the same circumstances and participants so that the EEOC may have the opportunity to investigate the allegedly discriminatory conduct and to seek voluntary compliance or conciliation without a lawsuit. *Conner*, 413 F.3d at 680, citing *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202-03 (7th Cir. 1996); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864-66 (7th Cir. 1985). In this case, the court does not reach the merits of Troutt's Title VII sex discrimination claim because Troutt has failed to exhaust her administrative remedies.

Troutt alleges that the City discriminated against her by denying her promotions because she is female. On summary judgment, she challenges only

three specific promotions in her Title VII claim: Jerry Shrout's promotion from sergeant to lieutenant on May 1, 2006, and Jim Blythe's and Scott Evans's promotions to captain on December 16, 2006. Troutt filed her second EEOC charge on January 27, 2006, months before Shrout, Blythe, or Evans was promoted.[13] It would have been impossible for Troutt to describe the conduct related to her May 2006 and December 2006 non-promotion in her EEOC charge filed in January 2006. Troutt did not amend that charge while it was pending before the EEOC, and she did not file a third charge with which she could have amended her complaint in this court. The City argues these claims should be barred, and the court agrees.

Troutt argues that the court should hear her Title VII sex discrimination claims because the May and December 2006 promotions were reasonably related to the allegations in her charge. She contends that her charge contained "a series of allegations that [the City] has engaged, and continued to engage, in an ongoing practice of discriminatory promotional practices with respect to police officers," and that her charge "was not limited to the events of the past, but rather . . . incorporate[d] present and future discriminatory actions by [the City]." Pl. Surreply 2.

---

[13]Troutt filed her complaint in this court on August 7, 2006, after Shrout was promoted but before Blythe and Evans were.

Employment decisions such as termination, failure to promote, denial of transfer, or refusal to hire are each discrete acts that occur when the discriminatory decision is made, and they are actionable only if the victim files a charge with the EEOC. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). To permit Troutt to proceed to bring her claims relating to discrete instances of alleged discriminatory decision-making without requiring her to first exhaust her administrative remedies would undermine the administrative exhaustion requirement imposed by Congress.

Troutt also argues that the May and December 2006 promotions implicate the same individuals and conduct as the conduct alleged in her EEOC charge, thus giving the City "at least some sort of notice" of the conduct about which she complains. Pl. Surreply 2, citing *Geldon v. South Milwaukee School Dist.*, 414 F.3d 817, 820 (7th Cir. 2005) (affirming trial court's finding that plaintiff failed to exhaust administrative remedies where plaintiff brought suit based on substitute custodian position but complained to EEOC only about relief custodian position, although positions were offered around the same time and by the same decision makers); *Gawley v. Indiana University*, 276 F.3d 301, 313-14 (7th Cir. 2001) (affirming trial court's finding that plaintiff's claims of retaliation that were not brought before the EEOC would not stand because the new allegations involved different persons and different conduct from that asserted in the EEOC charge).

In her January 2006 EEOC charge, Troutt complained about several specific promotions: Bob Bowser's promotion in April 2005, Jack Bailey's promotion in August 2005, and Ray Anderson's "recent" promotion. Her charge did not mention Shrout, Blythe, or Evans or their promotions (nor could it have). This case is indistinguishable from *Conner v. Illinois Department of Natural Resources*, 413 F.3d 675, 680 (7th Cir. 2005), in which the Seventh Circuit held that because it would be impossible to describe conduct related to a non-promotion that occurred one month after a complainant filed her charge with the EEOC, the claim was procedurally barred. The EEOC process, again, is designed to do much more than give the City "at least some sort of notice" of discriminatory conduct. It permits the EEOC to investigate the discrete decision at issue, even where the decision makers and the alleged victim are the same, and to seek voluntary compliance or conciliation between those parties without a lawsuit. Here, Troutt failed to use that process with respect to the promotion decisions she challenges now. Troutt's sex discrimination claims may not proceed under Title VII.

B. *Equal Protection Sex Discrimination Claim*

1. *Adequacy of the Allegations*

A plaintiff challenging state action need not exhaust administrative remedies to bring an equal protection claim to court, as she must for Title VII. Troutt's equal protection claim stemming from Shrout's May 2006 promotion is properly before the court to consider the merits. Defendants argue that the court should not entertain Troutt's equal protection claim regarding the promotions of Blythe and Evans in December 2006 because Troutt did not amend her August 2006 complaint to reflect her assertion, brought on summary judgment, that those promotions were discriminatory. The court disagrees.

Under Rule 8(a)(2), a plaintiff's requisite "short and plain statement of the claim" must contain a minimal level of factual detail. *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S.Ct. 1955, 1964-65 (2007); see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, 235-236 (3d ed. 2004) ("The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action"). Though a complaint must be sufficiently detailed to "give the defendant fair notice of what . . . the claim is and the grounds upon which it rests," *Bell Atlantic Corp.*, — U.S. at —, 127 S.Ct. at 1964, "the intent of the liberal notice pleading system is to ensure that claims are determined on their merits rather than through

missteps in pleading." 2 James W. Moore, et al, Moore's Federal Practice § 8.04 (3d ed. 2006); see also *Connor*, 413 F.3d at 679.

Troutt's complaint alleges that "since filing and resolving her first Charge of Discrimination, Troutt has been passed over for numerous promotions in favor of male officers who have not engaged in protected activity," and that "Lawrence has continued its unlawful and discriminatory practices of not advertising job openings, not having a promotional process, and not having a written policy regarding promotions as part of a concerted effort to promote male officers at the expense of female officers." Complaint ¶¶ 22-23. Troutt's complaint was sufficient to put defendants on notice of Troutt's claims (discriminatory promotions) and the grounds upon which her claims would rest (that she had been passed over for men who were allegedly less qualified, including Blythe and Evans). Defendants fully briefed the facts and circumstances of the December 2006 promotions on summary judgment, see Def. Br. 17-18, and have not shown prejudice. Also, if the court were to grant summary judgment to defendants on these grounds, Troutt could file a new complaint tomorrow asserting the same claims that have already been the subject of discovery and summary judgment briefing. On its own initiative, the court therefore amends Troutt's complaint pursuant to Fed. R. Civ. P. 15(b) to reflect that her equal protection claims are based on her allegations that she was passed over in favor of Shrout in May 2006 and in favor of Blythe and Evans in December 2006.

2. *Merits of Equal Protection Sex Discrimination Claims*

To prove her surviving failure to promote claim, Troutt chooses to rely on the indirect, burden-shifting method under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). See *Salas,* 493 F.3d at 926 (employee may prove a *prima facie* equal protection violation using the same indirect, burden shifting method used for Title VII claims). Troutt must first establish a *prima facie* case of sex discrimination by demonstrating that: (1) she is a member of a protected class; (2) she applied for and was qualified for the position sought; (3) she was rejected for that position; and (4) her employer granted the promotion to someone outside of the protected group who was not better qualified than Troutt. *Grayson v. City of Chicago,* 317 F.3d 745, 748 (7th Cir. 2003).[14]

Defendants argue that Troutt's *prima facie* case fails because she did not apply for the promotions at issue – those of Shrout, Blythe, and Evans. Under ordinary circumstances, this might prevent her from establishing her *prima facie* case. See *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 738-39 (7th Cir. 2006) (plaintiff could not contend that employer violated her rights by not considering

[14]Troutt asserts that it was improper for defendants to "add[ ] . . . a relative qualifications standard to the fourth prong of a failure to promote case." Pl. Response 8. Defendants' inclusion of a relative qualifications standard is not error, and is an accurate reflection of the test commonly used by courts in this circuit (including this one) in failure to promote cases. See, *e.g.*, *Fischer v. Avanade, Inc.*, 519 F.3d 393, 402 (7th Cir. 2008); *Sublett*, 463 F.3d at 737; *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 732 (7th Cir. 2001); *Fulmore v. Home Depot, U.S.A., Inc.*, 423 F. Supp. 2d 861, 872 (S. D. Ind. 2006).

her for a position in which she did not express an interest); *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 558 (7th Cir. 2004) ("If a plaintiff does not apply for a job vacancy that is posted, [she] cannot make a *prima facie* case for unlawful discrimination . . . unless [she] demonstrates that the employer's discriminatory practices deterred [her] from applying."). This case is not so simple, however. Troutt has shown that prior to implementation of the merit system in January 2007, open positions were not posted and no formal means were in place by which Troutt or any other officer might have applied for promotions. On two occasions the defendants did advertise an open position, and on both occasions Troutt applied. Gliszczynski Aff. ¶ 2; Troutt Dep. 14-15. In addition, the two promotions to captain were not under the merit system at all, but were administrative positions left to the judgment of the mayor and/or chief. Because no formal promotions process was in place, a jury could find, based on Troutt's actions, that Troutt did what she could to apply under the promotions process (such as it was). Troutt has satisfied the second prong of her *prima facie* case.

Defendants also argue that Troutt failed to show a *prima facie* case because the officers who were promoted were more qualified than Troutt. Def. Br. 15-18. They argue that at the time of Shrout's promotion from sergeant to lieutenant on May 1, 2006, he had been a Lawrence police officer since 1988, and he was promoted because of his longevity, loyalty to the department, positive attitude, and his willingness to put the police department above his personal ambition. Bailey Aff. ¶ 2. Bailey, who was chief in May 2006, believed that Shrout was the

best candidate for promotion to lieutenant. Bailey Aff. ¶ 2. Defendants argue that Blythe was promoted to captain in December 2006 because of reports that he had performed well on various runs and because he had "displayed significant concern for public safety as well as a high degree of energy," and that Evans had a strong work ethic, an exemplary record, and a familiarity with investigations. Grandy Aff. ¶¶ 4-5.

Defendants will be able to make these arguments to a jury. Troutt had more seniority than Shrout and Blythe. Evans' level of seniority is unknown, so the court must construe this point in favor of Troutt on summary judgment. Defendants had taken account of seniority in making many promotion decisions in the past, but seem to have given that factor considerably less weight in promoting Shrout, Evans, and Blythe over the more senior Troutt in May and December 2006, respectively. Also, defendants' other, "soft" reasons for the promotions – Shrout's loyalty, attitude, and devotion to the department, Blythe's concern for public safety and energy level, and Evans' work ethic, "exemplary" record, and knowledge of the investigative division – do not definitively make any of these male officers more qualified than Troutt, a female with no recorded performance or attitude problems and with greater seniority. A reasonable jury could conclude that Trout was the more qualified officer; she has satisfied the fourth prong of her *prima facie* case.

Under the indirect proof method, defendants must offer legitimate, non-discriminatory reasons for their decisions to not promote Troutt. *Emmel v. Coca-Cola Bottling Co.*, 95 F.3d 627, 629 (7th Cir. 1996). Troutt may still prevail if she then is able to show that the reasons put forth by the City are a pretext for discrimination. *Id*. As best the court is able to discern, defendants' proffered legitimate, non-discriminatory reasons for Troutt's non-promotion are the same reasons already noted for promoting Shrout, Blythe, and Evans in May and December 2006: Shrout had longevity, loyalty, a positive attitude, a willingness to put the department above his own ambition, and then-chief Bailey believed he was the best candidate for the promotion; Blythe had performed well as an officer, was concerned for public safety, and had a high energy level; and Evans had prior experience as a lieutenant, a strong work ethic, an "exemplary" record, and knowledge of the investigative division. Bailey Aff. ¶ 2; Grady Aff. ¶¶ 4-5. The defendants make no attempt to impugn Troutt's performance or behavior to explain her non-promotion, but their explanations in favor of Shrout's, Blythe's and Evans' promotions provide sufficient basis for the court to proceed to the question of pretext.

To show pretext, Troutt must show that the legitimate, non-discriminatory reasons provided by the defendants were lies and that defendants actually were motivated by a prohibited animus, such as her sex. See *Perez v. Illinois*, 488 F.3d 773, 776 (7th Cir. 2007); *Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 823 (7th Cir. 2006). This examination is not meant to address whether the employer was

correct in its judgment, but rather to determine whether the employer honestly believed the stated justifications. See *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006).

Troutt points to defendants' reasons for the promotions of the male officers given in its interrogatory answers, compares them to the reasons given on summary judgment, and accuses defendants of offering "nothing more than a self-serving, *post hoc* effort to escape liability." Pl. Response 10. When Troutt submitted an interrogatory to defendants asking why Shrout was promoted to lieutenant, defendants responded that Shrout was promoted "due to his experience and performance as an officer." Def. Ans. to Interrog. 8. In the same response, defendants stated that Blythe and Evans were promoted in December 2006 "due to the change in administration." Although inconsistent reasons for an employment decision can be sufficient to demonstrate pretext, *e.g.*, *Simple v. Walgreen Co.*, 511 F.3d 668, 671 (7th Cir. 2007), here the court does not find such an inconsistency, even with the generous standard that applies on summary judgment. Defendants gave less detail in their interrogatory response than they have on summary judgment, but those explanations build on one another, they do not cancel each other out. The court cannot find a triable issue on pretext on that basis alone.

However, Troutt also has brought forward evidence sufficient to allow a jury to find that Mayor Cantwell herself, who was serving in the City's highest

executive office at the time, held a discriminatory animus toward women in the police department. Mayor Cantwell held weekly meetings with top officers in the police department. Those meetings were known as the "C*** Club," and the "password" was "c***." The term derived from Cantwell's common use of that word to refer to the female members of the police department, including Troutt. Bailey Pl. Aff. ¶ 5-11; Bowser Aff. ¶ 8-14; Burns Aff. ¶ 6-10. Defendants argue that the frequent use of this term by the mayor amounted to nothing more than the proverbial "stray remarks," or "isolated comments that are . . . insufficient to establish that a particular decision was motivated by discriminatory animus." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007). Such remarks, however, can provide an inference of discrimination when the remarks were (1) made by a decision maker; (2) around the time of the decision; and (3) in reference to the adverse employment action. *Id*.

Based on the evidence Troutt has presented to the court, the court cannot conclude that the pervasive use of the word "c***" in weekly meetings attended by the mayor and the leadership of the police department was unrelated to the leadership and promotion decisions made by those members. Troutt has demonstrated sufficiently that these remarks were made by at least one decision maker (Cantwell). The frequency and pervasiveness of its use mean that the court cannot rule out the strong possibility that these remarks were made around the time of the May and December 2006 promotions and in reference to those actions. A reasonable jury could conclude, based on the pervasiveness and regularity of

the use of the word, that if the decision makers present at these weekly meetings used, heard, and absorbed such toxic language so casually on a week to week basis, that the same attitude towards women would infect their promotional decisions (which were ultimately subject to the mayor's review and control). A jury could easily find that these were not merely "stray remarks."

And indeed, the remarks are relevant to the particular promotional decisions at issue. Shrout was promoted in May 2006 under Chief Bailey, and Blythe and Evans were promoted in December 2006 under Chief Grandy. Bailey testified that he attended these meetings, and though it is unknown whether Grandy attended as well, a jury could conclude from this evidence that Mayor Cantwell's hostility toward female police officers infiltrated the promotional decision-making process, even if Cantwell herself was not the formal decision maker. See *Brewer v. Board of Trustees of Univ. of Ill.*, 479 F.3d 908, 917-920 (7th Cir. 2007); see also *Phelan v. Cook County*, 463 F.3d 773, 784 (7th Cir. 2006) ("It would be an odd result if an employer could escape the possibility of . . . liability . . . simply by scattering supervisory responsibilities amongst a number of individuals, creating a . . . supervisory Hydra."). Employers may be held liable where a supervisor uses a different decision maker as her "'cat's paw' – the conduit [for] prejudice." *Phelan*, 463 F.3d at 784. That reasoning can work both upstream, as in *Brewer* or *Phelan*, or downstream, where a senior leader sets a tone of hostility toward one class of employees and leaves the specific decisions to lower-ranking personnel. Troutt has offered evidence from which a reasonable

jury could find pretext. Defendants' motion for summary judgment must be denied as to Troutt's equal protection sex discrimination claims.

3. *Individual Liability and Qualified Immunity on the Equal Protection Claim*

Troutt brought suit against Mayor Cantwell in both her official and individual capacities, Gliszczynski in his individual capacity, and Bailey in his official capacity. Troutt's equal protection sex discrimination claims are based on the promotions of Shrout to lieutenant in May 2006 and Blythe and Evans to captain in December 2006. Cantwell served as mayor when each of these decisions was made. Bailey was chief in May 2006, and Grandy was chief in December 2006. Gliszczynski served as chief from October 2004 to April 16, 2006. Gliszczynski Aff. ¶ 2; Cantwell Aff. ¶ 17. Troutt has not offered evidence that Gliszczynski was involved in any way in the decision-making process for the three promotions still at issue. Because a defendant cannot be found liable under section 1983 unless he participated directly in the constitutional violation, see *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1039-40 (7th Cir. 2003), the individual claims against Gliszczynski are dismissed, and his motion for qualified immunity is moot.

Mayor Cantwell, the remaining individual defendant, also seeks qualified immunity on Troutt's equal protection claim. If Troutt is able to establish intentional discrimination based on her sex at trial (and she has offered sufficient

evidence to go to a jury), there will be no basis for qualified immunity. The law has long been well-established that the equal protection clause of the Fourteenth Amendment prohibits public employers from engaging in such sex discrimination. See, *e.g.*, *Nanda v. Moss*, 412 F.3d 836, 844 (7th Cir. 2005) ("it has been plain in this circuit for some time that arbitrary gender-based discrimination . . . violates the equal protection clause."). Defendant Cantwell's motion for summary judgment on the defense of qualified immunity is denied.

II. *Troutt's Claim of Unlawful Retaliation Under Title VII*

Defendants argue that the court should not consider Troutt's Title VII retaliation claims, which are based on promotions that occurred after she filed her January 27, 2006 charge, because she failed to exhaust her administrative remedies with the EEOC. Def. Reply Br. 8. Although keeping in mind the Supreme Court's direction that ordinarily "each discriminatory act starts a new clock for filing charges alleging that act," *National Railroad Passenger Corp.*, 536 U.S. at 113, Troutt's retaliation claims fit a well-recognized exception to that rule. To avoid unduly burdening the EEOC (and to avoid an endless cycle of charge, lawsuit, retaliation, new charge, new lawsuit, etc.), courts may permit employees who have filed a prior charge of discrimination and later allege that they were retaliated against because of that charge to be excused from filing yet another charge. See, *e.g.*, *Horton v. Jackson County Bd. of County Com'rs*, 343 F.3d 897, 898 (7th Cir. 2003), citing *McKenzie v. Illinois Dept. of*

*Transportation*, 92 F.3d 473, 482 (7th Cir. 1996), see also *Gawley v. Indiana University*, 276 F.3d 301, 314 n.8 (7th Cir. 2001); *Heuer v. Weil-McLain*, 203 F.3d 1021, 1023 (7th Cir. 2000). That is the case here, and Troutt's Title VII retaliation claims may proceed.

Title VII makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment . . . because [the employee] has opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3(a). Here, Troutt alleges that the City denied her access to promotional opportunities and delayed her promotion in retaliation for her decision to file a charge with the EEOC in November 2003, and then promoted Jerry Shrout, Jim Blythe, and Scott Evans instead of her in retaliation for her decision to file a second charge with the EEOC in January 2006 and to file this lawsuit in August 2006. Troutt relies on the direct method of proof to avoid summary judgment. See *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662-63 (7th Cir. 2006) (plaintiff may prove retaliation through either the direct or indirect methods of proof).

Under the direct method, a plaintiff must demonstrate that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse employment action; and (3) a causal connection exists between the two. *Tomanovich*, 457 F.3d at 663; see also *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006). Troutt satisfied the first prong by filing her charges with the EEOC and

her subsequent lawsuit. See *Ajayi v. Aramark Bus. Serv. Inc.*, 336 F.3d 520, 533 (7th Cir. 2003) (filing an EEOC charge amounts to protected activity for purposes of a later retaliation claim). The City argues, however, that Troutt did not suffer a materially adverse employment action and that, even if she did, no causal connection exists between her protected activity and the employment action.

A. *Materially Adverse Actions*

To proceed on her retaliation claim, Troutt must demonstrate that she suffered a "materially adverse" action. See *Burlington Northern*, 548 U.S. at 68; *Nichols v. Southern Illinois Univ.– Edwardsville*, 510 F.3d 772, 779-80 (7th Cir. 2007). These include acts that would dissuade a reasonable employee from making a claim of discrimination. *Burlington Northern*, 548 U.S. at 68. Defendants contest Troutt's assertion that the City's failure to move more quickly to implement a merit system was an adverse action.[15] It is true that, under some circumstances, a delay in promoting an employee can constitute a materially adverse employment action. See *Cullom v. Brown*, 209 F.3d 1035, 1042 (7th Cir. 2000). However, that is not the case here. To prevail, Troutt must demonstrate that a reasonable employee would have been dissuaded from filing a charge of discrimination by the prospect that the City would fail to move more quickly to

---

[15]Troutt bases her claim on the May and December 2006 promotions specifically, and also states that "the City's repeated failures to promote her, the City's long delay in promoting her, and the City's decision to prevent Troutt from access to promotional activities" amounted to an adverse action. The court understands this to be an argument that the City's failure to implement a merit system was retaliation against Troutt.

implement a merit system. In other words, Troutt must show that a reasonable employee who believed that the lack of a formal promotion process was discriminatory would be dissuaded from filing a charge by the fact that a formal promotion policy would still not be in place after the charge. Non-action or delay might be retaliatory under other circumstances, but it is too much of a stretch to conclude that a reasonable employee would have been dissuaded from complaining here.

Troutt was not singled out by the City's failure to implement a merit system sooner. Every officer eligible to be promoted was affected by the City's non-action, including many who had not complained of illegal discrimination. There is nothing here from which a reasonable jury could conclude that the City's failure to take faster strides to implement a merit system was a materially adverse action for purposes of Troutt's retaliation claim. Her retaliation claim is limited to the specifics of the May 2006 and December 2006 promotions, which clearly amounted to materially adverse employment actions.

B. *Causation Under the Direct Evidence "Mosaic"*

Troutt has shown that she engaged in protected activity and that she suffered a materially adverse employment action. For her retaliation claim to succeed under the direct method of proof, she must also come forward with evidence of a causal link between the two. While truly direct evidence essentially

requires an admission by the decision maker that his actions were motivated by the plaintiff's protected activity, a plaintiff can also prevail by assembling what is known as a "convincing mosaic" of circumstantial evidence indicating that a defendant acted with a discriminatory or retaliatory motive. See *Sylvester v. SOS Children's Villages Illinois, Inc.*, 453 F.3d 900, 903-04 (7th Cir. 2006) (reversing summary judgment for defendant where plaintiff claiming retaliation had assembled a sufficient mosaic of evidence of retaliatory motive); *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000); *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994).

The Seventh Circuit has described three types of circumstantial evidence that can create this mosaic of proof, either individually or in combination. See *Troupe*, 20 F.2d at 736. Most plaintiffs will bring direct evidence through "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Id.*, citing *Giacoletto v. Amax Zinc Co.*, 954 F.2d 424, 426 (7th Cir. 1992); *Holland v. Jefferson National Life Ins. Co.*, 883 F.2d 1307, 1314-15 (7th Cir. 1989). Second, plaintiffs may show that similarly situated employees who were not in the plaintiff's protected class received systematically better treatment in the workplace. This showing need not be rigorously statistical. See *Troupe*, 20 F.3d at 736. Third, a plaintiff might show that he or she was qualified for the job but was passed over or replaced by a similarly situated persons not in the protected

class, and that the employer's stated reason for the difference in treatment was pretextual. *Id*. at 736. Regardless of the category of evidence the plaintiff brings forward, to survive a motion for summary judgment the evidence must point to a discriminatory (or retaliatory) reason for the employer's action. See *Sylvester*, 453 F.3d at 905; *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003); see also *Troupe*, 20 F.3d at 737 (circumstantial evidence must allow a rational trier of fact to infer that defendant had fired plaintiff because the latter was a member of a protected class).

Troutt tries to build a mosaic from several types of evidence. She questions the timing of the promotions at issue to support her claim – Troutt filed her second EEOC charge on January 31, 2006, and Shrout was promoted in May 2006. She filed her complaint on August 7, 2006, and Blythe and Evans were promoted in December 2006. Timing alone cannot support a claim of retaliation. See *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 939 (7th Cir. 2007); see also *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) (finding that "mere temporal proximity" between the complaint and the alleged retaliation "will rarely be sufficient" to survive summary judgment). Also, here, the times between Troutt's complaints and the decisions not to promote her were a little long to be highly probative by themselves.

However, in this case the timing does not stand alone. Troutt also contends that the City's citation of Troutt's "attitude problems" and her decision to put her

personal interests before the department's is actually "a thinly veiled reference to her having filed a charge of discrimination."[16] Pl. Response 14. Troutt's contention is not quite correct. The City has asserted that Shrout was promoted in May 2006 because of his loyalty, his positive attitude, and his willingness to put the department ahead of his personal ambition. The City did not state directly that it believed the opposite to be true for Troutt, but when coupled with the other evidence, particularly the fact that the City apparently abandoned its adherence to seniority as a criterion for promotion when Shrout, Blythe, and Evans were promoted above Troutt, a reasonable jury could construe what the City says in favor of Shrout's promotion as criticizing Troutt for her complaints of discrimination.

Troutt also offers evidence from several ranking members of the police department that Cantwell hated Troutt "with a passion." Bailey Pl. Aff. ¶ 11; Bowser Aff. ¶ 14. To be probative of pretext, Troutt must connect Cantwell's hatred to Troutt's complaints. The declarants' statements regarding Cantwell's feelings for Troutt are of a general nature, and are not directly connected to the timing, substance, or existence of Troutt's EEOC charges or later lawsuit. However, these statements, together with the City's suspicious reasons for Shrout's promotion, its departure from seniority as a criterion for promotion, and

---

[16]Also, Troutt maintains her contention that the City has "created a whole new set of explanations for [Blythe's and Evans's] promotions" on summary judgment compared to the explanations the City provided in discovery. Pl. Response 15. As discussed above, the City's stated explanations for the December 2006 promotions have not shifted.

the timing of Troutt's non-promotions could convince a reasonable jury that the City's true reason for not promoting Troutt in May and December 2006 was because she had a record of complaining of discriminatory treatment. The City's motion for summary judgment on this claim is denied.

III. *Breach of Contract*

On January 27, 2004, the City and Troutt entered a settlement agreement that included the following term:

> Within six months of execution of this Agreement, [the City] agrees to make a good faith effort to formulate a proposal of a merit system which will govern the procedures for promoting the police officers of the Lawrence Police Department. Further, [the City] agrees to present such proposal to the police officers (voting members) for their consideration of the proposed merit system.

Cantwell Aff. Ex. C. Within the six month time period specified in the settlement agreement, the parties agree that the only effort the City made to formulate a merit system was one conversation held between Mayor Cantwell and then-Chief Parish. Cantwell Aff. ¶ 8. Nothing more happened until April 2005, when Chief Gliszczynski issued a memorandum to Captain Bailey discussing his desire to move forward with the merit system and to have the FOP meet. Gliszczynski Aff. ¶ 3, Ex. A. The merit system then was formulated, was voted down by the police officers in April 2006, was passed by a second police vote in August 2006, was passed by the Lawrence City Council in November 2006, and was ratified by the

police department on December 13, 2006. Cantwell Aff. ¶ 10, Ex. F; Gliszczynski Aff. ¶ 4, Exs. D, E.

To prove her breach of contract claim under Indiana state law, Troutt must demonstrate: (1) the existence of a contract; (2) the City's breach of the contract; and (3) damages resulting from the breach. See *American Family Mutual Ins. Co. v. Matusiak*, 878 N.E.2d 529, 533 (Ind. App. 2007); *Rogier v. American Testing & Engineering Corp.*, 734 N.E.2d 606, 614 (Ind. App. 2000).

The City first argues that the "good faith effort" provision was too uncertain and indefinite to be enforced. Def. Br. 29-31; see, *e.g.*, *Wenning v. Calhoun*, 827 N.E.2d 627, 629-30 (Ind. App. 2005) (contract for sale of "3 acres of 28 acres" was too indefinite to be enforced because subject land was not identified sufficiently). Where "good faith effort" is found to be an implied contractual term under Indiana law, the Indiana courts define it as "what a reasonable person would determine is a diligent and honest effort under the same set of facts or circumstances." *AquaSource, Inc. v. Wind Dance Farm, Inc.*, 833 N.E.2d 535, 539 (Ind. App. 2005) (finding that condition precedent implies an obligation to make a reasonable and good faith effort to satisfy the condition). The court sees no reason to deviate from this definition in the agreement agreed to by these parties, in which "good faith effort" was an express term. The term is not too indefinite to enforce. It is true that many Indiana cases decline to *imply* a duty of good faith and fair dealing in most contracts, but there are exceptions for insurance

contracts and some employment contracts, as well as for all commercial contracts subject to Indiana's adoption of the Uniform Commercial Code, Ind. Code § 26-1-1-203. See *Lake County Trust Co. v. Wine*, 704 N.E.2d 1035, 1039 (Ind. App. 1998). Even the cases declining to imply a duty of good faith make clear that they would enforce an explicit and agreed upon promise to act in good faith. *E.g.*, *Allison Union Hospital, Inc.*, 883 N.E.2d 113, 123 (Ind. App. 2008); *Lake County Trust*, 704 N.E.2d at 1039. Defendants have not cited any cases holding that a promise to make a good faith effort is simply too indefinite to be enforced. Any such holding would cut wide swaths through centuries of Anglo-American contract law.

Here, within the agreed-upon six month period, all the City did toward formulating a merit system was to hold one conversation between the then-mayor and the then-police chief. No documents were drafted as a result of this meeting, and no other conversations or meetings were held until April 2005 – sixteen months after the agreement was signed. That was when Chief Gliszczynski issued a memorandum to Captain Bailey regarding his desire to move the project forward. Taking this evidence (or, perhaps more appropriately, this lack of evidence) in the light most favorable to Troutt, a reasonable jury could conclude that the lone conversation – held on an unknown date, of an unknown duration, of an unknown depth of detail, and with no perceptible outcome – was not a good faith effort under the terms of the settlement agreement. Troutt's breach of contract claim survives summary judgment on the issue of breach.

For her claim to go to trial, Troutt must also offer evidence of damages. Under Indiana law, the measure of damages for breach of contract is either such damages as may fairly and reasonably be considered as arising naturally, *i.e.*, according to the usual course of things from the breach of contract itself, or as may be reasonably supposed to have been within the contemplation of the parties at the time they entered into the contract as a probable result of the breach. See *Rogier*, 734 N.E.2d at 614. Here, Troutt argues that were it not for the City's breach of the settlement agreement, the merit system would have been in place sooner and she would have been fairly considered for the promotions that occurred in the meantime. Pl. Response 17-18.

Troutt will need to connect a long series of events before she can show any damages that might fairly be said to have arisen naturally from the City's breach of the settlement agreement. Even after the merit system was formulated to the mayor's satisfaction, it could not be adopted unilaterally. The city council had to pass an ordinance adopting the system, Ind. Code § 36-8-3.5-3(a), and the City's safety board then had to give all active members of the police department three weeks' notice that a vote would be held to approve or reject the system. Ind. Code § 36-8-3.5-4(a). Only then, if the police department approved the proposal, would the proposal go into effect, on January 1st of the year following the approval vote. Ind. Code § 36-8-3.5-4(d). In the City of Lawrence, when the merit system proposal first was presented to the police for a vote in April 2006, the voting members of the department voted against the proposal. When the proposal was

presented to the police for the second time, in August and December 2006, it passed, and the merit system was implemented in January 2007.

Only the "permanent" ranks of sergeant and lieutenant are subject to the City of Lawrence's merit system. Cantwell Aff. Ex. H. Art. IV. Troutt has no breach of contract claim regarding promotions to other ranks: chief, deputy chief, or captain. Also, Troutt was promoted to the rank of sergeant in February or March 2004 as part of the settlement agreement, so she cannot raise a claim that she was harmed by the City's failure to implement a merit system sooner on that basis.

In May 2006, Shrout was promoted from sergeant to lieutenant. Troutt did not apply for this promotion, but if a merit system had been in place in May 2006, Troutt would have been eligible for that promotion. After all, she had more seniority than Shrout, and the City's other stated grounds for Shrout's promotion – his longstanding loyalty, positive attitude, and willingness to put the department before his personal ambition – would not factor into his rating for the purpose of promotion under the merit system that was implemented in January 2007. See Cantwell Aff. Ex. H. Art IV (four factors considered for promotional ratings are (1) scores on a written competitive promotional examination; (2) performance record; (3) number of years of service; (4) performance on the oral competitive interview). However, for the merit system to have been in place in May 2006, the development and approval of the merit system would have had to have occurred in 2005, for

Indiana law dictates that once approved, merit systems take effect on January 1 of the year following the approval vote. See Ind. Code § 36-8-3.5-4(d). This means that in order for the merit system to have been effective in May 2006, when Troutt was passed over for promotion to lieutenant, quite a bit would have had to have happened between January 2004, when the settlement agreement was signed, and December 2005, the City's last opportunity to meet the deadline imposed by Ind. Code § 36-8-3.5-4(d).

For reasons explained above, Troutt is entitled to a trial on her equal protection sex discrimination claims and her Title VII retaliation claims. The court believes the most prudent approach to the damages problem on the contract claim is to submit the issue to the jury in that same trial. Although the chain of contingencies is long, Troutt has some evidence in her favor, including her persistence and success in seeking promotions and the fact that the City did manage to implement a merit system once it began trying to do so. The court declines to hold at this stage that no reasonable jury could find that Troutt would have been promoted to lieutenant in May 2006 if the merit system had been in place, and that the reason the merit system was not in place in May 2006 was due to the City's failure to put forth a good faith effort towards its implementation pursuant to the settlement agreement. The City's motion for summary judgment on Troutt's breach of contract claim is denied.

*Conclusion*

For the foregoing reasons, Defendants' summary judgment motion is granted with regard to Troutt's Title VII gender discrimination claims and her equal protection claim against defendant Gliszczynski. Summary judgment is denied for all other claims. Deborah Cantwell's assertion of qualified immunity is denied. Trial will be scheduled accordingly.

So ordered.

Date: August 8, 2008

DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Rosemary L. Borek
STEPHENSON MOROW & SEMLER
rborek@stephlaw.com,tralstin@stephlaw.com

Philip J. Gibbons, Jr.
GIBBONS JONES, P.C.
pgibbons@gibbonsjones.com

Andrew G. Jones
GIBBONS JONES P.C.
ajones@gibbonsjones.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com